UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA CLARK, | No. 2:15-cv-1211 JAM DB PS |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

Pending before the undersigned is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons stated below, the undersigned will recommend that defendants' motion for summary judgment be granted.

**BACKGROUND**

Plaintiff commenced this action on June 5, 2015, by filing a complaint and a motion to proceed in forma pauperis. (ECF Nos. 1 & 2.) On September 29, 2015, a previously assigned magistrate judge granted plaintiff's motion to proceed in forma pauperis and ordered service of the complaint.[2] (ECF No. 3.)

---

[1] Plaintiff is proceeding pro se in this action. Therefore, the matter was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

[2] On August 2, 2016, the matter was reassigned from the previously assigned magistrate judge to the undersigned. (ECF No. 19.)

1

Plaintiff is now proceeding on a second amended complaint filed November 21, 2016. (ECF No. 29.) Therein, plaintiff alleges, in relevant part, that on June 6, 2013, plaintiff was stranded on a bank of the American River. (Sec. Am. Compl. (ECF No. 29) at 4.[3]) Defendants Andrew Nelson and Christopher Kemp, park rangers with the Sacramento County Parks Department, responded to the scene along with emergency rescue personnel. (Id. at 3-4.) Without plaintiff's consent, defendant Nelson searched plaintiff and confiscated plaintiff's medical marijuana before discarding the marijuana. (Id. at 4.) Plaintiff "raised with Nelson and Kemp the impropriety of Nelson's actions" and the defendants arrested plaintiff without probable cause. (Id.)

After being arrested, plaintiff was placed in the back of a police vehicle. (Id.) Plaintiff informed defendants Nelson and Kemp that she suffered from claustrophobia. (Id.) Plaintiff asked that the rear window be lowered to accommodate her claustrophobia. (Id.) Defendants refused and plaintiff "kicked the window of the police car, breaking it." (Id.) Another officer arrived, lowered a window, and transported plaintiff to the Sacramento County Jail. (Id.)

At the jail, defendant Nelson "and/or" Kemp applied plaintiff's handcuffs "too tightly." (Id. at 5.) Defendant Nelson then "pushed" plaintiff onto a bench, causing plaintiff's leg to make "slight" contact with defendant Nelson's leg. (Id.) Thereafter, defendant Nelson "violently grabbed plaintiff by the throat and choked her." (Id.) A Doe defendant "immediately joined . . . Nelson in violently grabbing Plaintiff by the throat and choking her." (Id.) Plaintiff was eventually released, but her cell phone, driver's license, and medical marijuana license were not returned to her at the time of her release. (Id.)

Based on these allegations, the second amended complaint asserted the following six causes of action: retaliation in violation of the First Amendment; false arrest; excessive force; illegal seizure of property; a Monell claim; and a claim pursuant to the Americans with Disabilities Act ("ADA"). Defendants filed a motion to dismiss on December 5, 2016. (ECF No. 30.) On July 27, 2017, the undersigned issued findings and recommendations recommending that

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

the ADA and Monell claims be dismissed entirely, that the claim for illegal seizure be dismissed as to defendant Sacramento County, and that defendant Sacramento County be dismissed from this action. (ECF No. 37.) Moreover, it was recommended that defendants Nelson and Kemp be ordered to file an answer to the second amended complaint's claims for retaliation in violation of the First Amendment, false arrest, excessive force, and illegal seizure of property. (Id.) The assigned District Judge adopted those findings and recommendations in full on September 27, 2017. (ECF No. 41.)

Defendants Kemp and Nelson filed an answer on October 12, 2017. (ECF No. 42.) On August 21, 2018, defendants filed the pending motion for summary judgment. (ECF No. 60.) Due to plaintiff's failure to file a timely opposition, the undersigned issued plaintiff an order to show cause on October 3, 2018. (ECF No. 65.) Plaintiff filed a response to the order to show cause and opposition to defendants' motion for summary judgment on October 19, 2018.[4] (ECF No. 66.)

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants' statement of undisputed facts, supported by citation to declarations, exhibits, plaintiff's deposition, and plaintiff's failure to respond to defendants' requests for admissions, asserts in relevant part the following. On the afternoon of June 6, 2013, plaintiff, plaintiff's brother Raynaldo Velasquez, and plaintiff's friend Ashley Caitlin arrived at a raft launch located on Sunrise boulevard, and were floating on the American River by 6:00 p.m. Plaintiff smoked medical marijuana earlier that day and while on the river. Plaintiff also consumed alcohol while on the river. (Defs.' SUDF (ECF No. 60-2) 3, 5-8.[5])

At approximately 8:50 p.m. Sacramento County Park Ranger Kemp responded to a call to assist stranded rafters at the El Manto access of the American River Parkway. Defendant Kemp located the rafters along a cliff on the north side of the river. The three individuals were later

---

[4] Although plaintiff's response is not formatted as a traditional opposition, in light of plaintiff's pro se status, the undersigned has construed the filing as an opposition to defendants' motion for summary judgment.

[5] Citations here are to defendants' specific numbered undisputed fact asserted.

3

identified as plaintiff, Raynaldo Velasquez, and Ashley Caitlin. Defendant Kemp called for assistance from Battalion 14 of the Sacramento Metro Fire Department in order to ferry the group across the river by boat to the El Manto access side. (Defs.' SUDF (ECF No. 60-2) 10-11.)

At approximately 9:30 p.m., the fire department arrived to assist plaintiff and the others on the north side of the river. The fire department recovered a plastic baggie left at the shore which contained a very inconsequential amount of a substance appearing to be marijuana. Defendant Kemp instructed defendant Nelson to dispose of it at the scene. (Defs.' SUDF (ECF No. 60-2) 12, 17.)

According to defendant Nelson and defendant Kemp, all three of the rescued individuals were visibly intoxicated. There was an odor of alcohol coming from them. They had bloodshot, watery eyes, slurred speech, and unsteady balance. And they were cursing, uncooperative, and argumentative with each other and with the defendants. Plaintiff testified at her deposition that her eyes were red and she smelled of alcohol, "from the water and from crying and from a whole bunch of things." (Defs.' SUDF (ECF No. 60-2) 22-23.)

At approximately 10:14 p.m. defendant Kemp arrested the three suspects for violation of California Penal Code § 647(f), public intoxication. Defendant Kemp placed plaintiff in handcuffs, checking for the appropriate fit and locking. Plaintiff was shouting, swearing, and very angry. (Defs.' SUDF (ECF No. 60-2) 32-34.)

Defendants placed plaintiff in the back of defendant Nelson's County vehicle, a medium-sized Dodge Durango SUV. Defendants stepped away to place handcuffs on Velasquez and Caitlin. After several minutes, defendant Nelson heard the sound of glass breaking coming from his vehicle. He observed glass on the ground, that the rear door frame on the driver's side was bent approximately five to six inches, and the window was broken out. Plaintiff was the sole occupant and responsible for this damage to the vehicle. In a subsequent jury trial on May 6, 2014, plaintiff was found guilty of violating California Penal Code § 594(A), vandalism, for damaging the vehicle. (Defs.' SUDF (ECF No. 60-2) 36-37.)

Shortly after arriving in the booking area of the jail, plaintiff was seated on a bench with other arrestees when she kicked defendant Nelson's leg which triggered a response from him as

well as from other officers in the area to restrain plaintiff. Defendant Nelson physically directed plaintiff with his hand to sit down on the bench, and plaintiff kicked defendant Nelson with her right foot. Another unnamed officer immediately rushed over, to physically restrain plaintiff on the bench. In plaintiff's Release Screening Form for the Sacramento County Sheriff's Department, it states "I put my leg out to stop ranger[.]" (Defs.' SUDF (ECF No. 60-2) 39-41.)

During this time, defendant Nelson guided plaintiff with his right hand only, while continuing to hold paperwork in his left hand. The other officer restrained plaintiff's upper body area with the back of his left arm and hand, while plaintiff's upper body was lying back on the bench. Immediately after the events, defendant Nelson continued normally with booking, and plaintiff was medically screened for custody by correctional medical staff. Defendant Kemp was not present and did not witness the incident at the jail at or about 11:52 p.m. when plaintiff was restrained in the booking area. (Defs.' SUDF (ECF No. 60-2) 42-44.)

PLAINTIFF'S OPPOSITION

As noted above, plaintiff failed to file a timely opposition to defendants' motion. Accordingly, on October 3, 2018, the undersigned issued plaintiff an order to show cause as to why this action should not be dismissed due to a lack of prosecution. (ECF No. 65.) Plaintiff was also ordered to file an opposition or statement of non-opposition to defendants' motion for summary judgment on or before October 19, 2018. (Id. at 2.)

On October 19, 2018, plaintiff filed a response addressing why this action should not be dismissed. Plaintiff's filing does not comply with Local Rule 260(b). That rule requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial.

In the absence of the required admissions and denials, the undersigned has reviewed plaintiff's filings in an effort to discern whether plaintiff denies any fact asserted in defendants' statement of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate

////

////

1 the existence of a disputed issue of material fact with respect to any of plaintiff's claims. The
2 undersigned will discuss plaintiff's relevant denials, if any, in analyzing defendants' motion for
3 summary judgment.

**STANDARDS**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

////

**ANALYSIS**

**I. Deemed Admissions**

On July 10, 2018, defendants served on plaintiff Defendants' Requests for Admissions set one. (Nathan Decl. (ECF No. 60-4) at 2-3.) Plaintiff never responded to those requests for admissions. And plaintiff never moved to withdraw or amend those admissions.

The "[f]ailure to timely respond to requests for admissions results in automatic admission of the matters requested. No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing." F.T.C. v. Medicor LLC., 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002) (citation omitted); see also In re Pacific Thomas Corporation, 715 Fed. Appx. 778, 779 (9th Cir. 2018) ("Rule 36 is self-executing, meaning that a party admits a matter by failing to serve a response to the request within thirty days; the opposing party does not have to file a motion to deem the matter admitted."). "Once admitted, the matter 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission' pursuant to Rule 36(b)." Conlon v. U.S., 474 F.3d 616, 621 (9th Cir. 2007) (quoting Fed. R. Civ. P. 36(b)); see also In re Carney, 258 F.3d 415, 419 (5th Cir. 2001) ("a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)").

Here, plaintiff's failure to respond has resulted in the following deemed admissions:

- On June 6, 2013, plaintiff consumed alcohol and smoked marijuana both before rafting and while rafting on the American River.
- Plaintiff smelled liked alcohol when rescued from the river on June 6, 2013.
- On June 6, 2013, plaintiff was unable to safely drive home.
- The defendants did not confiscate personal property from plaintiff.
- Plaintiff's handcuffs were not unreasonably tight when plaintiff was arrested on June 6, 2013.
- Plaintiff kicked defendant Nelson while sitting on a bench at the Sacramento County Main Jail.
- Defendant Nelson never grabbed plaintiff's throat.
- Defendant Nelson did not choke plaintiff at any time.

- Plaintiff did not suffer any injuries as a result of the defendants' actions during the arrest.
- Plaintiff did not suffer any injuries as a result of defendant Nelson's actions at the Sacramento County Jail on or about June 6, 2013.
- All of plaintiff's personal property that was seized during the arrest has been returned to plaintiff.

(Defs.' RFA (ECF No. 60-4) at 19-23.)

In light of plaintiff's pro se status, despite these admissions below the undersigned has evaluated defendants' motion for summary judgment in light of the claims found in the second amended complaint and the evidence before the court.

## II. Plaintiff's Claims[6]

### A. False Arrest

The second amended complaint alleges that the defendants arrested plaintiff "for public intoxication despite the absence of a warrant or probable cause." (Sec. Am. Compl. (ECF No. 29) at 6.) Defendants' motion for summary judgment argues that plaintiff was lawfully arrested for public intoxication. (Defs.' MSJ (ECF No. 60-1) at 4.)

"'[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (quoting Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988)). As the Ninth Circuit has recognized, the federal standard for probable cause to arrest is as follows:

> "The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense."

Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007) (quoting United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005) (citation omitted), cert. denied, 547 U.S. 1056 (2006)); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1147 (9th Cir. 2012) ("Probable cause exists

////

---

[6] The undersigned has reordered the analysis of plaintiff's claims to discuss them in a more chronological manner.

if Crumrine knew reasonably trustworthy information sufficient to warrant a prudent person in believing that [Tsao] had committed or was committing an offense.").

Here, plaintiff was arrested for violation of California Penal Code § 647(f). In relevant part, § 647(f) makes it illegal for an individual to be: (1) intoxicated; (2) in a public place; and (3) unable to exercise care for their safety or the safety of others. See Perez v. Santa Cruz, City of, Case No. 15-cv-2527 BLF, 2017 WL 6026246, at *8 (N.D. Cal. Dec. 5, 2017). It is undisputed that plaintiff was in a public place. Although plaintiff would no doubt seek to provide additional context, as detailed above defendants have provided evidence also establishing the following undisputed facts.

Prior to defendants' contact with plaintiff, plaintiff had consumed alcohol and marijuana. Plaintiff smelled of alcohol and had red eyes. And the defendants had been called to rescue plaintiff's group because plaintiff and her group were unable to care for their safety. Moreover, defendant Nelson has provided a declaration asserting that plaintiff exhibited visible signs of intoxication. Specifically, plaintiff had slurred speech and unsteady balance. Plaintiff was uncooperative, argumentative, and cursing. (Nelson Decl. (ECF No. 60-3) at 3.) Defendant Kemp has provided a declaration asserting that plaintiff "smelled strongly of alcohol," "had bloodshot, glassy eyes," and was "argumentative with [her group] and with [the defendants]" and was cursing at the defendants. (Kemp Decl. (ECF No. 60-6) at 2-3.)

Plaintiff's opposition fails to dispute any of these facts. Instead, plaintiff argues that the "charge was dismissed[.]" (Pl.'s Opp'n (ECF No. 66) at 5.) Although it is true that plaintiff was not convicted of the same offense for which plaintiff was arrested, that does not establish that plaintiff's arrest was without probable cause. See Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988) ("The fact that plaintiffs had been previously acquitted in the criminal case is far removed from establishing whether probable cause existed for their arrests.").

Plaintiff also argues, and the defendants do not dispute, that the defendants did not give plaintiff a field sobriety test prior to plaintiff's arrest. (Pl.'s Opp'n (ECF No. 66) at 5.) According to defendants their "training and employer guidelines" do not require the administration of field sobriety tests to make an arrest for public intoxication. (Defs.' SUDF

(ECF No. 60-2) at 31.) Presumably this is because "a field sobriety test, while perhaps indicative of a level of impairment that would be relevant in the context of a charge of driving while intoxicated, is not necessarily indicative of the level of impairment that would justify arrest for violation of section 647(f)," as public intoxication is not premised on the offender having a certain amount of alcohol in their blood. Amezcua v. City of Fresno, No. CV F 07-1268 AWI SMS, 2008 WL 5329934, at *7 (E.D. Cal. Dec. 19, 2008).

Finally, plaintiff argues that because plaintiff "went from the processing tank to the release tank at no point in time did the jail feel that the plaintiff . . . needed to sit in a sober tank and sober up to be release." (Pl.'s Opp.'n (ECF No. 66) at 5. Plaintiff's argument, however, speaks to a decision made by the jail, not one made by either defendant. The simple fact that plaintiff was not placed in a "sober tank" by the jail's staff does not mean that plaintiff was not intoxicated, as there may well have been administrative reasons for the jail's housing policy.

Based on the above, the undersigned finds that the defendants had probable cause to arrest plaintiff for violation for § 647(f). Accordingly, as to this claim, the undersigned finds no dispute of material fact and recommends that defendants' motion for summary judgment be granted.

**B.     Illegal Seizure of Property**

The second amended complaint alleges that the defendants illegally seized plaintiff's "driver's license, cell phone, and medical marijuana card following her release from custody[.]" (Sec. Am. Compl. (ECF No. 29) at 7.) Defendants' motion argues that because plaintiff was lawfully arrested, "it was lawful therefor[e] for the arresting officers to take control of and seize her property[.]" (Defs.' MSJ (ECF No. 60-1) at 8.)

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)); see also United States v. Hall, 978 F.2d 616, 619 (10th Cir. 1992) ("Tangible property is seized when a police officer exercises control over the property by removing it from an individual's possession.").

The Supreme Court "has stated 'the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause' to believe that the individual has committed a crime." Bailey v. U.S., 133 S. Ct. 1031, 1037 (2013) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)); see also U.S. v. Place, 462 U.S. 696, 701 (1983) ("In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized.").

Here, the undersigned has already found that plaintiff's arrest was based on probable cause. And because plaintiff was lawfully arrested the defendants were permitted to search plaintiff and seize certain items pursuant to that arrest. See U.S . v. Hudson, 100 F.3d 1409, 1419 (9th Cir. 1996). The second amended complaint, however, appears to be complaining about the return of plaintiff's property "following her release from custody[.]" (Sec. Am. Compl. (ECF No. 29) at 7.) There is no evidence before the court, however, that the defendants had any control over any of plaintiff's property after releasing plaintiff to the jail on the day of the incident.

Accordingly, as to this claim, the undersigned finds no dispute of material fact and recommends that defendants' motion for summary judgment be granted.

**C.     Retaliation**

The second amended complaint alleges that after plaintiff "criticized Defendant Nelson for acting inappropriately in confiscating her medical marijuana," the defendants "retaliated by arresting Plaintiff." (Sec. Am. Compl. (ECF No. 29) at 5.) Defendants argue that it is beyond dispute that plaintiff was arrested for public intoxication. (Defs.' MSJ (ECF No. 60-1) at 9.)

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." City of Houston, Tex. v. Hill, 482 U.S. 451, 462-63 (1987). In the Ninth Circuit, "an individual has a right 'to be free from police action motivated by retaliatory animus but for which there was probable cause.'" Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013) (quoting Skoog v. County of Clackamas, 469 F.3d 1221, 1235 (9th Cir. 2006)). "In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his

actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct.'" Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) (alternations omitted) (quoting Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994)).

Here, plaintiff has offered no allegations, let alone evidence, that would establish that deterring plaintiff's speech was a substantial or motivating factor in the defendants' decision to arrest plaintiff. Moreover, although the fact that defendants had probable cause to arrest plaintiff "is not dispositive" it nonetheless "'has high probative force.'" Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 901 (9th Cir. 2008) (alteration omitted) (quoting Hartman v. Moore, 547 U.S. 250, 265 (2006)).

Accordingly, the undersigned finds there is not a dispute of material fact with respect to this claim and recommends that defendants' motion for summary judgment be granted.

### D. Excessive Force

Finally, plaintiff's second amended complaint alleges a claim for the excessive use of force. Defendants' motion for summary judgment asserts that there is no admissible evidence of the excessive use of force. (Defs.' MSJ (ECF No. 60-1) at 11.)

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors.'" Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)). "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002) (citing Graham, 490 U.S. 386).

The second amended complaint alleges two distinct uses of force: (1) the handcuffing of plaintiff; and (2) an altercation on a bench in the jail.[7]

---

[7] The second amended complaint also asserts in a vague and conclusory manner that the defendants used excessive force against plaintiff "in failing to roll down the police window to

### 1. Handcuffing

The second amended complaint alleges that "[a]t the County Jail, Plaintiff had handcuffs applied too tightly by Nelson and/or Kemp, and suffered pain in her wrist and shoulders as a result." (Sec. Am. Compl. (ECF No. 29) at 5.) "It is well-established that overly tight handcuffing can constitute excessive force." Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); see also Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (unreasonably injuring a person's wrists while applying handcuffs constitutes use of excessive force).

In support of defendants' motion for summary judgment, defendants have offered the declaration of defendant Kemp. Therein, defendant Kemp states that he placed plaintiff in handcuffs and checked "for the appropriate fit and locking." (Kemp. Decl. (ECF No. 60-6) at 3.) Plaintiff has provided no evidence to dispute Kemp's declaration.

Moreover, "[t]he Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." Dillman v. Tuolumne County, No. 1:13-CV-0404 LJO SKO, 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013) (collecting cases); see also Sinclair v. Akins, 696 Fed. Appx. 773, 776 (9th Cir. 2017) ("Appellants have failed to cite authority holding that a detainee's complaints of tight handcuffs alone, without any physical manifestation of injury (during or after the handcuffing), where the initial handcuffing was justified, constituted excessive force."). "Absent in this case is evidence of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored." Hupp v. City of Walnut Creek, 389 F.Supp.2d 1229, 1233 (N.D. Cal. 2005).

Accordingly, the undersigned finds no dispute of material fact with respect to this claim and recommends that defendants' motion for summary judgment be granted.

---

accommodate Plaintiff's claustrophobia[.]" (Sec. Am. Compl. (ECF No. 29) at 5.) Although there may be circumstances in which the confinement in a patrol car can constitute excessive force, the undersigned is aware of no authority providing that refusal to roll down a window alone constitutes excessive force. See Dillman v. Vasquez, No. 1:13-CV-0404 LJO SKO, 2015 WL 881574, at *9 (E.D. Cal. Mar. 2, 2015) ("Whereas an unnecessary exposure to heat may cause a constitutional violation being briefly confined in uncomfortable conditions, such as a hot patrol car, does not amount to a constitutional violation.").

14

## 2. Jail Bench

The second amended complaint also alleges as follows:

> Defendant Nelson eventually moved Plaintiff to a bench in the jail and, without provocation or justification, pushed plaintiff down onto the bench. The maneuver caused Plaintiff's leg to come up at which point it may have made slight contact with Defendant Nelson's leg. Plaintiff did not intend to kick or otherwise make any physical contact with Nelson, and no reasonable officer in Nelson's position could have believed otherwise.
>
> Very soon after pushing Plaintiff down on the bench, and with no provocation or justification, Nelson violently grabbed Plaintiff by the throat and choked her.
>
> Defendant John Doe 1, seeing Deputy Nelson grab Plaintiff by the throat, but without any provocation or justification of any kind, immediately joined Deputy Nelson in violently grabbing Plaintiff by the throat and choking her.

(Sec. Am. Compl. (ECF No. 29) at 5.) In response, defendant Nelson has declared that while at the jail plaintiff kicked Nelson's leg "which triggered a response from him as well as other officers in the area to restrain" plaintiff. (Nelson Decl. (ECF No. 60-3) at 4.)

It is true that the Ninth Circuit has "'held on many occasions'" that "'[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011) (alterations omitted) (quoiting Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc)); see also C.V. by and through Villegas v. City of Anaheim, 823 F.3d 1252, 1255 (9th Cir. 2016) ("[S]ummary judgment should be granted sparingly in excessive force cases.").

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Here, in support of the motion for summary judgment defendants have offered video recordings of the events in the jail. See Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to

15

the nonmovants . . . so long as their version of the facts is not blatantly contradicted by the video evidence.").

That video blatantly contradicts plaintiff's version of events. See Defs.' Ex. A & B (ECF No. 8). Specifically, the video depicts defendant Nelson, seen in a Park Rangers uniform distinct from the other officers, pointing the first finger of his righthand close to plaintiff's face before plaintiff, of her own volition, sits on the bench. Defendant Nelson is standing over plaintiff in close proximity. In defendant Nelson's left hand are some papers.

Plaintiff subtly rises, either to stand or shift positions. Defendant Nelson extends a hand to plaintiff's left, upper chest presumably to ensure that plaintiff did not rise. Although plaintiff may argue about the amount of force Nelson's hand exerted, it does not appear to have been considerable.

Regardless, it appears indisputable from the video that as defendant Nelson is turning to leave plaintiff purposefully makes contact with defendant Nelson's right leg. Again, plaintiff may argue over the amount of force plaintiff exerted. However, it is clear that plaintiff purposefully made contact with defendant Nelson.[8] And it does not appear that the contact was caused by the actions of defendant Nelson or any attempt by plaintiff to simply regain a posture.

Moreover, it is also clear that defendant Nelson did not violently grab plaintiff by the throat and choke her. Instead, the video depicts defendant Nelson returning his right hand to plaintiff's left, upper chest area. Again, it does not appear that defendant Nelson is exerting much force in doing so. Another unidentified officer rushes over, and shoves plaintiff down on the bench by her throat and upper chest. Defendant Nelson backs away and makes no further contact with the plaintiff. At no time did defendant Nelson grab plaintiff by the throat or choke plaintiff.

Given the video evidence, no reasonable jury could believe plaintiff's version of events. Accordingly, the undersigned finds no dispute of material fact with respect to this claim and recommends that defendants' motion for summary judgment be granted.[9]

---

[8] Defendants have also submitted a copy of a Release Screening Form in which plaintiff wrote that plaintiff "put my leg out to stop Ranger[.]" (Nelson Decl., Ex. D (ECF No. 60-3) at 12.)

[9] In light of this finding, the undersigned need not reach defendant Nelson's qualified immunity

16

**CONCLUSION**

Given the evidence presented by the parties on summary judgment, there does not appear to be even a scintilla of evidence that either defendant violated plaintiff's rights as alleged. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint").

In the absence of any evidence of a disputed issue of material fact regarding plaintiff's claims, the undersigned finds that defendants are entitled to summary judgment in their favor on all of the claims remaining in the second amended complaint. After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to plaintiff's claims and on which plaintiff would bear the burden of proof at trial.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' August 21, 2018 motion for summary judgment (ECF No. 60) be granted;

2. Judgment be entered; and

3. This action be closed.

Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections.

////

////

---

argument.

17

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 21, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.pro se/clark1211.msj.f&rs